

DEFENDANT'S EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LUCINDA BEADLE, Personal Representative of the Estate of Daniel A. Elrod, Deceased,<br><br>   Plaintiff,<br><br>vs.<br><br>THE CITY OF OMAHA, a political subdivision of the State of Nebraska; TODD SCHMADERER, in his official capacity as Chief of the City of Omaha Police Department; ALVIN LUGOD, individually and in his official capacity as an officer of the City of Omaha Police Department; DOES 1-25, inclusive,<br><br>   Defendants. | CASE NO: 8:18-cv-82<br><br><br><br>AFFIDAVIT OF<br>ALVIN F. LUGOD |

STATE OF NEBRASKA )
          ) ss.
COUNTY OF DOUGLAS )

  ALVIN F. LUGOD, being first duly sworn under oath, deposes and states that the following matters, facts, and things are true and correct to the best of his knowledge:

  1. On February 23, 2015 I was employed as a uniformed officer in the City of Omaha, Nebraska, Police Department and was on duty. I am a defendant in this action. I have personal knowledge of the facts stated herein.

  2. On that date I was on routine patrol near the intersection of 15th and Dorcas in Omaha, Nebraska. I was finishing a call with my uniformed patrol partner, Officer Bradley Bornhoft, when I heard tones come across the dispatch radio for a robbery at the Family Dollar

located at 1725 S 13th Street in Omaha, Nebraska. After hearing the tones I believed that an armed robbery had just occurred at that location, which was only a couple of blocks away, and my partner and I got into our cruiser and headed to that location.

3. When we arrived at the Family Dollar located at 1725 S 13th Street we observed three individuals standing outside of the store, one of whom appeared to be an employee. These individuals pointed north on 13th Street, gave a description of the suspect, and indicated that the individual who had just robbed the store was in that direction.

4. I proceeded to drive my police cruiser northbound on 13th Street where my partner and I encountered the suspect in the robbery, an individual now known to me as Daniel Elrod. Mr. Elrod was wearing a black heavy coat with a hood and light colored pants, and matched the description of the suspect in the robbery at the Family Dollar.

5. Upon encountering Mr. Elrod the emergency lights of my police cruiser had already been activated and I pulled the vehicle up to him. Officer Bornhoft and I both exited the police cruiser and I drew my firearm.

6. I commanded Mr. Elrod to show me his hands and to get on the ground. While Mr. Elrod initially complied with my command to show me his hands, he refused to get on the ground and began walking away from Officer Bornhoft and I.

7. Mr. Elrod then indicated to me that he had a gun and stated several times that I was going to have to shoot him. He continued to attempt to put distance between himself and Officer Bornhoft and I, eventually climbing onto the hood of a parked car near a fence.

8. During this time I continued to command Mr. Elrod to show me his hands and to get on the ground. Mr. Elrod repeatedly refused my commands and made multiple motions beneath his coat toward the waistband of his pants where he indicated his gun could be.

9. At this point, based upon my knowledge of the situation and my training and experience, I believed that Mr. Elrod had just committed the robbery in question, that he was armed with a firearm based upon his statements and attempts to reach beneath his coat, that he was repeatedly refusing lawfully given police commands, and that he was taking active steps to resist arrest by attempting to evade capture. I believed that Mr. Elrod was a danger and a threat to myself, to other officers on scene, and to the community at large.

10. In an attempt to end the situation without the use of deadly force I requested that an electronic control device, commonly known as a Taser, be used to subdue Mr. Elrod. Officer Geyza deployed her electronic control device, however it was ineffective and Mr. Elrod was able to pull the prongs and attached wires from his person.

11. Mr. Elrod's agitation was escalated by the failed use of the electronic control device to subdue him. He turned from me, obscuring my vision of Mr. Elrod's hands and waistband where Mr. Elrod had indicated several times that he had a firearm. At this time Mr. Elrod began to move off of the vehicle that he was on. Based upon my viewpoint I believed that Mr. Elrod was moving in the direction of Officer Bornhoft, and that Mr. Elrod posed a threat of deadly force to Officer Bornhoft and other officers arriving on scene.

12. Because I believed that Mr. Elrod posed a threat of deadly force to other officers on the scene I made the decision to discharge my firearm and use deadly force against Mr. Elrod to stop the threat that he posed. I believed that Mr. Elrod posed a threat of deadly force based upon my understanding of the totality of the circumstances, namely that Mr. Elrod had just committed the criminal offense of armed robbery, that Mr. Elrod repeatedly refused lawfully issued commands by law enforcement officers to keep his hands visible and to get down on the ground, that Mr. Elrod stated multiple times that he had a gun, that Mr. Elrod had reached

underneath his coat towards his waistband multiple times, that Mr. Elrod was able to avoid proper implementation of the electronic control device rendering it ineffective, and that I believed Mr. Elrod was moving toward other officers on scene and could use the firearm he claimed he had against those officers.

13. Once I made the decision to use deadly force against Mr. Elrod I utilized my training and fired three shots, then reassessed the situation to determine if the threat posed by Mr. Elrod was over. I acted intentionally when I discharged my weapon three times on February 23, 2015.

14. During all my interaction with Daniel Elrod on February 23, 2015, I acted as a uniformed Omaha police officer. I tried to make a good decision based on what I knew of the situation. At all times I believed my conduct was lawful and in accordance with existing law and departmental policy. At all times I acted in my capacity as a certified law enforcement officer for the City of Omaha, Nebraska.

FURTHER AFFIANT SAITH NAUGHT.

_____
Alvin F. Lugod, Affiant.

SUBSCRIBED and SWORN TO before me this 27th day of August, 2018.

GENERAL NOTARY - State of Nebraska
NICOLE A. RISCHLING
My Comm. Exp. September 11, 2021

_____
Notary Public